STATE OF WEST VIRGINIA

In re: C.V.

No. 17-0346 (Mercer County 16-JA-118)

FILED

October 23, 2017

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.V., by counsel David B. Kelley, appeals the Circuit Court of Mercer County's March 8, 2017, order terminating his parental, custodial, and guardianship rights to C.V.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), P. Michael Magann, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, the DHHR filed an abuse and neglect petition against the parents. At the time the petition was filed, the child remained a patient in the Neonatal Intensive Care Unit at Carillion Roanoke Memorial Hospital in Roanoke, Virginia, where he had been since shortly after his birth. The child, and his twin who died shortly after birth, had extensive medical conditions as a result of the mother's substance abuse during the pregnancy. The child's conditions include Bronchopulmonary Dysplasia, Congenital Emphysema, and Pulmonary Hypertension. The child required intensive cardiac and respiratory monitoring, continuous vital sign monitoring, a tracheostomy tube, a feeding tube, and a ventilator. The petition alleged that the DHHR made services available to the parents, but neither parent had participated in the efforts to develop a care plan for the child by the time of his discharge. The petition further alleged that petitioner did not participate in the care of his child, nor had he visited the child since March of 2016. Finally, the petition alleged that petitioner had not consistently provided the child with emotional, social, and financial support.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court held an adjudicatory hearing in October of 2016. Petitioner failed to attend but was represented by counsel. The circuit court heard the testimony of the Child Protective Services ("CPS") worker and the mother. According to the CPS worker, petitioner had not been in contact with the DHHR since June of 2016, save for one text message. The CPS worker testified that petitioner had not visited the child since March of 2016 because he claimed that he was "always working." According to the mother, petitioner received instructions from the hospital on how to care for the child a "few times." The circuit court found that petitioner neglected the child based upon not "doing what he needs to do" and failing to comply with the services provided.

In February of 2017, the circuit court held a dispositional hearing. Petitioner again failed to appear but was represented by counsel. According to a CPS worker, petitioner made no effort to be a part of the proceedings and no one at CPS had heard from petitioner since June of 2016. The CPS worker further testified that she attempted to contact petitioner multiple times via phone call, text message, and letter to no avail. Ultimately, the circuit court terminated petitioner's parental, custodial, and guardianship rights because he failed to cooperate with the DHHR's services, failed to participate with the hospital's education services regarding proper care of the child, and failed to participate in the court proceedings.[2] It is from the dispositional order dated March 8, 2017, that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

---

[2] Petitioner's parental, custodial, and guardianship rights were terminated below. The mother is currently on an improvement period. According to the record, the child is in the home of a foster family. The goal is reunification with the mother after successful completion of her improvement period. Alternatively, according to the guardian, the concurrent permanency plan is adoption by the foster parents.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without granting an improvement period. We disagree. Pursuant to West Virginia Code § 49-4-610, "[a] court may grant a respondent an improvement period . . . when . . . the respondent files a written motion . . . [and] demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" The record on appeal is devoid of any such written motion. In fact, petitioner admits that he did not file a motion for an improvement period with the circuit court. Moreover, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, even if petitioner had filed a written motion, it is clear from the record that he failed to demonstrate his ability to fully participate in an improvement period. The circuit court was presented with evidence that petitioner consistently failed to participate in the proceedings and multidisciplinary team ("MDT") meetings. The record shows, as per testimony from the dispositional hearing, that petitioner was not in contact with the DHHR between June of 2016 and March of 2017. Petitioner also failed to visit the child in the hospital after March of 2016 and did not respond to any attempts by the DHHR to implement services. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). As such, it is clear that petitioner failed to establish that he was likely to fully participate in an improvement period.

Further, West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As previously mentioned, petitioner failed to consistently participate in the hospital's education services regarding how to care for the child, failed to attend any MDT meetings, and failed to attend both the adjudicatory and dispositional hearings. Further, petitioner failed to visit his sick child in the hospital after March of 2016 and had no contact with the DHHR after June of 2016. While petitioner asserts that his absences and lack of participation were due to work, he failed to submit any evidence of employment. Given these facts, we find that there was no reasonable likelihood that the conditions of neglect or abuse could be

substantially corrected in the near future. As such, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings in circuit court regarding the mother of C.V. are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 8, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

4

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker